## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JOSE MUNIZ, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *v.* | § | Civil No. SA-18-cv-01002-OLG |
| | § | |
| CITY OF SAN ANTONIO, TEXAS and | § | |
| ANGEL CASTELLO, in his individual | § | |
| capacity, | § | |
| | § | |
| *Defendants.* | § | |

## MEMORANDUM OPINION AND ORDER

On this date, the Court considered Plaintiff Jose Muniz's Motion for Summary Judgment (docket no. 34) ("Plaintiff's Motion), Defendant Angel Castello's Motion for Summary Judgment (docket no. 32) ("Castello's Motion"), and Defendant City of San Antonio's Motion for Summary Judgment (docket no. 37) (the "City's Motion"). Having reviewed the motions and the parties' briefing, the Court finds that Plaintiff's Motion should be granted in part, denied in part and denied as moot in part, Castello's Motion should be granted in part and denied as moot in part, and the City's Motion should be denied in part and denied as moot in part.

## BACKGROUND

In the present lawsuit, Plaintiff Jose Muniz ("Plaintiff") has asserted First Amendment and Fourteenth Amendment challenges to the enforcement of an ordinance issued by the City of San Antonio (the "City") that was in effect during the dates immediately preceding and following the 2018 NCAA Division I Men's Final Four Basketball Championship in San Antonio (the "2018 Final Four"). *See* docket no. 1.

Plaintiff, who resides in Abilene, Texas, is a Christian evangelist who regularly hands out literature conveying evangelistic messages. *See* docket no. 34-1, Ex. A, ¶¶ 2-4, 8. In order to reach as many people as possible, Plaintiff regularly travels to sidewalks near well-attended events to distribute his religious literature. *See id.* at ¶¶ 8, 15.

On at least eleven occasions since 1997, the City has implemented "clean zone ordinances" for large portions of downtown San Antonio that designate certain areas as "clean zones" and restrict certain activities within those areas. *See* docket no. 8 ¶ 26. These ordinances have been passed in relation to certain sporting events hosted in the Alamodome in downtown San Antonio, and these ordinances require a license to sell and/or distribute services or goods inside the "clean zone" on or near the date of the sporting event in question. *Id.* at ¶ 27. Deposition testimony from Patricia Muzquiz-Cantor—the Director of the City's Convention and Sports Facilities Department—indicates that the clean zone ordinances are "primarily" intended to control ticket resale, vending activities, and the sale of non-licensed, unauthorized merchandise. *See* docket no. 34-1, Ex. K, at 10:20-11:17. In addition, the ordinances are intended to "preserve the health and safety of all citizens, visitors and participants, as well as preserve the aesthetic qualities of the downtown area." Docket no. 32-1 p. 1. To summarize, Ms. Muzquiz-Cantor testified that the clean zone ordinances are intended to be "a catchall for everything," including a tool to regulate commercial and other promotional activities near the Alamodome. *See* docket no. 34-1, Ex. K, at 10:20-11:17.

Consistent with the City's prior practices for large sporting events, the City enacted ordinance no. 2017-03-30-0186 on March 30, 2017 for the 2018 Final Four. *See* docket no. 32-1 (the "Clean Zone Ordinance"). The City's Clean Zone Ordinance used the same or similar language as that used in prior clean zone ordinances. *See* docket no. 8 at ¶ 28. Specifically, the

2

City's Clean Zone Ordinance authorized that a portion of the downtown area of the City would be designated as a clean zone during the weeks leading up to and through the event.[1] *See* docket no. 32-1. The Clean Zone Ordinance's title specifically states that the ordinance is intended to "regulate certain commercial activity on public property in connection" with the 2018 Final Four event. *See* docket no. 32-1 p. 1. Section 3 of the Clean Zone Ordinance designated the geographic boundaries of the clean zone. *See id.* at p. 2; docket no. 34-1, Ex. F. Section 5 of the Clean Zone Ordinance sets forth a general prohibition of certain activities within the clean zone, as follows:

> A person shall not occupy public property or rights-of-way within the Clean Zone for the purposes of selling, distributing or offering for sale or free of charge, services or goods, including, but not limited to food, drinks, flowers, plants, tickets, merchandise or souvenirs without authorization prescribed by this section.

Docket no. 32-1 p. 2. Notwithstanding the general prohibition contained in Section 5, Section 5(1) provides that an individual may request a license if he or she wishes

> to sell or vend food, frozen food, flowers, souvenirs or other merchandise, erect temporary signage, inflatables, banners [,] flags, pennants, wind or 'sandwich board' signs or project images, or otherwise engage in temporary promotional or commercial activities of any kind . . . within the geographical boundaries and dates of the Clean Zone . . . from a location which is on City property or rights-of-way.

*See id.* at p. 2. Among other things, such authorization requires the recommendation of an event sponsor, a background investigation from the San Antonio Police Department ("SAPD"), and the payment of a $750 licensing fee. *See id.* at pp. 2-3. Finally, Section 9 of the Clean Zone Ordinance—which lists the penalties for non-compliance—states as follows:

> Any person who engages in the activity defined in Section 5 without the prior recommendation of the Event Sponsor and a Clean Zone License issued by the City . . . will be subject to immediate impoundment of all tangible property related to the unauthorized commercial activity and may be subject to prosecution for a Class C misdemeanor and a fine not to exceed $2,000.00.

---

[1] The Clean Zone Ordinance stated that the clean zone would be in place from March 19, 2018 through April 5, 2018. *See* docket no. 32-1 p. 1.

3

Docket no. 32-1 p. 4.

On April 2, 2018, Plaintiff entered the designated "clean zone" in order to distribute literature to those attending the national championship basketball game. *See* docket no. 34-1, Ex. A, ¶ 24. The religious literature distributed by Plaintiff on the day in question was non-commercial in nature, as it did not promote any transaction or commercial event or entity. Specifically, Plaintiff distributed 3-inch by 5-inch cards that said "Smile!! God Loves You!!" on one side and contained bible verses and information regarding Plaintiff's ministry on the reverse side. *See* docket no. 34-1, Ex. B.

During Plaintiff's distribution of his literature, Plaintiff was approached by Defendant Angel Castello ("Castello"), a sergeant in the white-collar crimes division of the SAPD. *See* docket no. 37-2. Castello inquired whether Plaintiff had a license, and, after Plaintiff informed Castello that he did not have a license, Castello told Plaintiff that his literature distribution violated Section 5 of the Clean Zone because it prohibited the unauthorized distribution of anything within the Clean Zone. *See* docket no. 37-2 pp. 2-3; docket no. 32-2. Accordingly, Castello instructed Plaintiff to stop his distribution. *See id.* Plaintiff informed Officer Castello that he was not selling anything as part of his distribution, but Castello informed Plaintiff that his distribution was prohibited by the Clean Zone Ordinance regardless of whether Plaintiff was engaged in a commercial activity because the ordinance also prohibited distribution of items "free of charge." *See* docket no. 34-1, Ex. L at 29:18-24; docket no. 32-2. Officer Castello again directed Plaintiff to Section 5 of the Clean Zone Ordinance, and Castello advised Plaintiff that he was only enforcing the ordinance as written. *See id.* at 28:25-29:2; docket no. 32-2. Plaintiff was issued a citation for violation of the Clean Zone Ordinance, and Plaintiff was offered the options of leaving the designated clean zone if he wished to continue his distribution or remaining in the clean zone to

4

speak with attendees without distributing paper materials. *See* docket no. 32-2; docket no. 34-1, Ex. L at 22:9-25:25, 27:6-8, 34:22-35:9; docket no. 37-2. Castello also advised Plaintiff that he was welcome to challenge the ordinance in court if he felt it was unconstitutional. *See* docket no. 34-1, Ex. L at 28:7-21; docket no. 32-2. Plaintiff complied with Castello's instruction to leave the area, and the record indicates that Plaintiff's citation was ultimately dismissed. *See* docket no. 34-1, Ex. A, ¶¶ 49, 53, 55.

On September 21, 2018, Plaintiff filed the instant lawsuit alleging that the City and Officer Castello violated Plaintiff's First Amendment and Fourteenth Amendment rights by enforcing the Clean Zone Ordinance such that Plaintiff was restricted from distributing religious, non-commercial literature on a public sidewalk near the Alamodome. *See* docket no. 1. Plaintiff asserts claims both against the City and against Officer Castello. *See id.* Plaintiff seeks nominal damages of $1.00 from each Defendant, as well as his attorney's fees pursuant to 42 U.S.C. § 1988. *See id.* In addition, Plaintiff seeks declaratory relief from the Court with respect to his claims and injunctive relief that would prevent the City from implementing similar ordinances during subsequent major events occurring in San Antonio. *See id.*

On December 17, 2019, Defendant Castello moved for summary judgment on Plaintiff's claims for relief asserted against Castello.[2] *See* docket no. 32. Among other things, Castello's Motion asserts that Plaintiff's claims against Castello for damages are barred by the doctrine of qualified immunity. *See id.* On December 18, 2019, Plaintiff also moved for summary judgment

---

[2] Castello' Motion does not specifically brief the issue of Plaintiff's Fourteenth Amendment claims, and the motion states that "Plaintiff's due process challenges do not pertain to Castello." Docket no. 32 p. 3. The Court therefore does not interpret Castello's Motion to be specifically requesting summary judgment as to Plaintiff's Fourteenth Amendment theories of relief. This is merely a technical distinction, however, as the due process issues will nonetheless be addressed as part of the Court's analysis of Plaintiff's Motion and the City's Motion.

on each of his claims and with respect to each form of relief requested. *See* docket no. 34. Similarly, on December 23, 2019, the City moved for summary judgment on Plaintiff's claims against the City.[3] *See* docket no. 37. Each of the parties filed response briefs and/or reply briefs related to the various summary judgment motions. *See* docket nos. 38, 40 43, 44, 47, 50 & 51. Defendant Castello also filed objections to certain portions of Plaintiff's attached summary judgment evidence.[4] *See* docket no. 41. Finally, on two occasions, the Court permitted the parties to provide additional briefing related to Plaintiff's request for injunctive relief. *See* docket nos. 52 & 54. On both occasions, Plaintiff filed supplemental briefing in response to the Court's orders. *See* docket nos. 53 & 55.

Having considered the parties' briefing and other filings, the Court addresses the merits of the parties' summary judgment motions below.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(c). In making the determination of whether a genuine issue of material fact exists, the court reviews the facts and inferences to be

---

[3] The Court granted the City's request for a brief extension to file its dispositive motion. *See* docket no. 35.

[4] To the extent Castello contends certain assertions in Plaintiff's affidavit are "irrelevant," the Court has only considered the portions of the affidavit that it finds to be relevant to the pertinent issues and/or background of the case. *See* docket no. 41. To the extent Castello has lodged other objections to Plaintiff's evidence, the Court has not relied on any of the referenced evidentiary materials for the allegedly improper purposes listed in Castello's objections. *See id.* Thus, Castello's objections are overruled as moot.

drawn from them in the light most favorable to the non-moving party. *Reaves Brokerage Co., Inc. v. Sunbelt Fruit & Vegetable Co., Inc.,* 336 F.3d 410, 412 (5th Cir. 2003).

At the summary judgment stage, the movant bears the burden of identifying those portions of the record it believes demonstrate the "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna,* 401 F.3d 347, 349 (5th Cir. 2005). However, the movant need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.,* 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden "by pointing out 'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.,* 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)). If the movant satisfies its burden, the non-moving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l,* 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted); *see also Lincoln Gen. Ins. Co.,* 401 F.3d at 349. At the summary judgment stage, the non-movant cannot meet its burden with "conclusory allegations" or "unsubstantiated assertions." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 399 (5th Cir. 2008). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)).

A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey,* 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). "As to materiality, the substantive law will identify which facts are material." *Anderson,* 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude

the entry of summary judgment." *Id.* "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## DISCUSSION

Plaintiff has asserted First Amendment and Fourteenth Amendment claims against both the City and Officer Castello, and Plaintiff requests monetary relief, declaratory relief, and injunctive relief with respect to his claims. As discussed above, each of Plaintiff's claims is subject to cross-motions for summary judgment.

As set forth below, the Court concludes the enforcement of the Clean Zone Ordinance violated Plaintiff's Fourteenth Amendment rights.[5] The Court will first explain why Plaintiff's constitutional rights were violated and why the Clean Zone Ordinance is unconstitutionally vague before addressing the appropriate relief.

### I.    Plaintiff's Due Process Claim

Plaintiff asserts that the Clean Zone Ordinance is unconstitutionally vague—both facially and as applied to Plaintiff—because it fails to give fair notice of what conduct is prohibited and what conduct is allowed. *See* docket no. 34 p. 17. The record indicates that—on the day in question—Plaintiff believed that the non-commercial nature of his activities distinguished his conduct from that which was prohibited by the Clean Zone Ordinance. *See* docket no. 32-2. Plaintiff asserts that the "Clean Zone ordinance restricts the promotion of noncommercial ideas without providing fair notice that such expression is necessarily covered by the regulation." Docket no. 34 p. 18. On that basis, Plaintiff asserts that the City's enforcement of the Clean Zone Ordinance as to Plaintiff violated the Due Process Clause of the Fourteenth Amendment. *See id.*

---

[5] For the reasons set forth in Section II, the Court need not determine whether enforcement of the Clean Zone Ordinance *also* violated Plaintiff's First Amendment rights.

Additionally, Plaintiff argues that the Clean Zone Ordinance is vague on its face because its language makes it "extraordinarily difficult, if not impossible, for anyone to know exactly what activity is or is not regulated under the ordinance." *Id.* at p. 17. The City responds by asserting that the Clean Zone Ordinance "clearly prohibited the things that could not be handed out within the clean zone absent a license." Docket no. 50 p. 12. Thus, the City contends that the Clean Zone Ordinance passes constitutional muster. *See id.*

Below, the Court will first explain why the Clean Zone Ordinance was unconstitutionally vague as applied to Plaintiff's conduct, before addressing why the Clean Zone Ordinance is *also* vague on its face.

### A. Plaintiff's As-Applied Vagueness Challenge

"Vagueness may invalidate a criminal law for either of two independent reasons." *City of Chicago v. Morales,* 527 U.S. 41, 56 (1999). "First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement." *Id.; see also Kolender v. Lawson,* 461 U.S. 352, 357 (1983). Plaintiff's as-applied challenge focuses primarily on the first reason, and specifically asserts that the Clean Zone Ordinance does not provide notice that Plaintiff's activities were prohibited. *See* docket no. 34 p. 18. "The purpose of the fair notice requirement is to enable the ordinary citizen to conform his or her conduct to the law." *Morales,* 527 U.S. at 58. "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *Lanzetta v. New Jersey,* 306 U.S. 451, 453 (1939).

A review of the Clean Zone Ordinance makes clear that Plaintiff's due process rights were violated when the Clean Zone Ordinance was enforced to prohibit Plaintiff from distributing religious, non-commercial cards within the designated clean zone. To the extent it was the City's

intention to prohibit the distribution of religious, non-commercial materials, the drafting it selected leaves much to be desired. It would be concerning in itself if the Clean Zone Ordinance only failed to make clear that such conduct *was* prohibited. But instead, as discussed below, the Clean Zone Ordinance actually contains *affirmative* indications that the distribution of non-commercial items *was not* prohibited within the clean zone.

When determining whether an ordinance is unconstitutionally vague as applied to certain conduct, the court examines the language used in the ordinance and determines whether an ordinary person would have been able to determine that the relevant conduct was prohibited. *See United States v. Carlson*, CRIM. 12-305 DSD/LIB, 2013 WL 5125434, at *24 (D. Minn. Sept. 12, 2013), *aff'd*, 810 F.3d 544 (8th Cir. 2016) ("[T]he Court looks to the words and determines if someone of common intelligence would be able to understand what conduct has been prohibited."). In this case, that analysis starts with the ordinance's title. As noted above, the title of the Clean Zone Ordinance specifically states that the ordinance serves "to regulate certain *commercial* activity on public property" in connection with the 2018 Final Four. *See* docket no. 32-1 p. 1 (emphasis added). The Court finds that this language certainly indicates—at least at first glance— that the Clean Zone Ordinance intends to regulate *commercial*, rather than *non-commercial*, activities.

Moving to the substantive text of the ordinance, nothing in ordinance's provisions changes this Court's conclusion. Instead, the language used in subsequent sections of the ordinance reinforces the view that Plaintiff was not provided notice that the distribution of non-commercial, religious literature was covered by the ordinance's regulations. Specifically, Section 5 of the Clean Zone Ordinance specifically prohibits an individual from:

> occupy[ing] public property or rights-of-way within the Clean Zone for the purpose of selling, distributing or offering for sale or free of charge, services or goods,

10

including, but not limited to food, drinks, flowers, plants, tickets, merchandise or souvenirs without authorization prescribed by this section.

Docket no. 32-1 p. 3. The City appears to first argue that the religious, non-commercial cards distributed by Plaintiff constitute "goods,"[6] and thus, that Plaintiff had notice that his conduct was prohibited. *See* docket no. 50 pp. 13-14 & n.4 (noting that police report stated that "leaflets" constituted "goods"). The City's argument is unpersuasive for at least two reasons. First, neither the customary meaning nor *any* dictionary meaning of the term "goods" appears to include non-commercial paper cards or handouts. Instead, "goods" is defined in the Meriam-Webster Dictionary as "something that has economic utility or satisfies an economic want." Meriam-Webster, https://www.merriam-webster.com/dictionary/goods (last visited July 17th, 2020).[7] It is likely for this reason that the City's response quickly replaces "goods" with "materials" as it continues its argument that Plaintiff's conduct was clearly prohibited in the clean zone. *See* docket no. 50 p. 13 (arguing that the Clean Zone Ordinance regulated the distribution of "any and all free *materials* in the clean zone") (emphasis added). Second, the list of exemplary items provided in Section 5 all fit within the customary (and dictionary) meaning of "goods." Indeed, "food, drinks, flowers, plants, tickets, merchandise or souvenirs" are all items of "economic utility,"[8] and thus, the list provided *reinforces* the reasonable conclusion that Section 5 is intended to apply to the

---

[6] No party argues that Plaintiff's religious literature constitutes "services."

[7] Related definitions for the term "goods" in the dictionary include "personal property having intrinsic value but usually excluding money, securities, and negotiable instruments" or "something manufactured or produced for sale." *See id.*

[8] Section 5(1) contains a similar list of certain specific activities for which a license is required, and the Court again notes that the list is primarily commercial in nature. For example, Section 5(1) specifically discusses the selling or vending of many items. *See* docket no. 32-1 p. 3

distribution of commercial items of economic value, consistent with the ordinance's title.[9]

Accordingly, the Court finds the City's attempt to re-write the ordinance in its briefing to be

unpersuasive.

Finally, to the extent that there is any doubt as to the vagueness of the ordinance as applied

to Plaintiff's conduct, Section 9 of the Clean Zone Ordinance independently demonstrates why

the ordinance is unconstitutionally vague as applied to Plaintiff's actions. Section 9 of the Clean

Zone Ordinance—which lists the penalties for non-compliance—states as follows:

> Any person who engages in the activity defined in Section 5 without the prior
> recommendation of the Event Sponsor and a Clean Zone License issued by the City
> . . . will be subject to immediate impoundment of all tangible property related to
> the unauthorized *commercial* activity and may be subject to prosecution for a Class
> C misdemeanor and a fine not to exceed $2,000.00.

Docket no. 32-1 p. 4 (emphasis added). As the Court has discussed above, the Clean Zone

Ordinance's title and the language in Section 5 strongly indicate that the ordinance is intended to

prohibit unauthorized commercial activities within the Clean Zone. Section 9 solidifies that

indication. Notably, Section 9 provides the penalties and enforcement provisions related to

violations of the Clean Zone Ordinance, and Section 9—like the ordinance's title—specifically

references "commercial activity" only. *See id.* Plaintiff's materials were non-commercial in nature,

and Section 9 would have provided Plaintiff with yet an additional reason to believe that he would

not be subjected to the penalty provisions of the Clean Zone Ordinance.[10] It is therefore

---

[9] The ordinance's reference to distribution that is "free of charge" does not change the Court's conclusion. Indeed, items of economic value (e.g., branded merchandise, t-shirts, bobblehead dolls, etc.) may be given away for free near sporting events as part of *commercial* promotions.

[10] *Even assuming* Section 9's reference to "commercial activity" was only intended to apply to the impoundment of tangible property and not the other penalties listed in the Section, such an interpretation would still indicate to an "ordinary citizen" that the distribution of property prohibited in Section 5 was solely that of a commercial nature. Moreover, such an interpretation would fail to explain why the same limitation was also included in the ordinance's title.

unsurprising that Plaintiff—when presented with the Clean Zone Ordinance during his encounter with Officer Castello—attempted to distinguish his distribution as non-commercial.[11] *See* docket no. 32-2.

In sum, the clear language of the Clean Zone Ordinance demonstrates that the ordinance is unconstitutionally vague as applied to Plaintiff's conduct because it did not provide notice that Plaintiff's distribution of religious, non-commercial cards was prohibited within the clean zone. Accordingly, Plaintiff is entitled to summary judgment on his as-applied vagueness challenge. To that extent, Plaintiff's Motion will be granted and the City's Motion will be denied.

### B. Plaintiff's Facial Vagueness Challenge

In addition to his as-applied challenge, Plaintiff also asserts that the Clean Zone Ordinance is unconstitutionally vague on its face. *See* docket no. 1 ¶ 95. Plaintiff specifically argues that the ordinance's apparent regulation of all "temporary promotional . . . activities of any kind" makes it "extraordinarily difficult, if not impossible, for anyone to know exactly what activity is or is not regulated under the ordinance." Docket no. 34 p. 17. A "facial" challenge, in this context, means a claim that the law is "invalid *in toto*—and therefore incapable of any valid application." *Steffel v. Thompson*, 415 U.S. 452, 474 (1974). Thus, having already concluded that the ordinance is vague as applied to Plaintiff's conduct, the Court must now consider whether the Clean Zone Ordinance—or for that matter, any other ordinance using *identical* language—is void on its face.

---

[11] To be clear, certain language in the Clean Zone Ordinance could be read to prohibit "any temporary promotional . . . activity" without a license. *See* docket no. 32-1, p. 3. This is discussed further in Section I.B of this Order, *infra*. Thus, as discussed in Section III of this Order, *infra*, the Court can understand why Officer Castello *believed* that Plaintiff's conduct may violate the Clean Zone Ordinance. However, the next Section of this Order explains why that interpretation is not a permissible one, and the Fourteenth Amendment's requirement that a criminal ordinance provide fair warning counsels towards resolving any ambiguity such that it applies "only to conduct clearly covered" by the ordinance. *See United States v. Lanier*, 520 U.S. 259, 266 (1997).

In a facial challenge to the vagueness of a law, "a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982). In determining whether a statute could be interpreted to prohibit constitutionally protected speech, "a court should evaluate the ambiguous as well as the unambiguous scope of the enactment." *Vill. of Hoffman Estates*, 455 U.S. at 494 n.6. Indeed, the Supreme Court has long recognized that ambiguous meanings cause citizens to "'steer far wider of the unlawful zone' . . . than if the boundaries of the forbidden areas were clearly marked." *Baggett v. Bullitt*, 377 U.S. 360, 372 (1964) (quoting *Speiser v. Randall*, 357 U.S. 513, 526 (1958)). In this respect, vagueness and overbreadth challenges are similar.[12] *Kolender*, 461 U.S. at 358–59 n.8. If an ordinance reasonably can be read to "make a crime out of what under the Constitution cannot be a crime," the ordinance must be voided as vague.[13] *Coates v. City of Cincinnati*, 402 U.S. 611, 616 (1971).

In order to demonstrate why the Clean Zone Ordinance is unconstitutionally vague on its face, it is helpful to examine the language on which the City relies in its attempt to argue that Plaintiff's conduct was in fact clearly governed by the ordinance. Specifically, the City's

---

[12] Plaintiff has not explicitly challenged the overbreadth of the statute. However, the Supreme Court has recognized the similarities between the vagueness and overbreadth analysis for the purposes of facial challenges. *See Kolender*, 461 U.S. at 358–59, n.8; *Vill. of Hoffman Estates*, 455 U.S. at 494 & n.6.

[13] Courts have explained why a person in Plaintiff's position has standing to assert that the ordinance is facially vague in the event the ordinance can be read to prohibit constitutionally protected speech. Specifically, "[i]f a statute is so vague that it can reasonably be interpreted to prohibit constitutionally protected speech as well as conduct the state may constitutionally forbid, people may choose to refrain from speaking rather than challenge the statute's constitutionality in their criminal prosecution." *United States v. Gaudreau*, 860 F.2d 357, 360 (10th Cir. 1988). For that reason, courts "allow a person who is prosecuted for conduct which the state may constitutionally forbid to challenge the statute as vague on its face, rather than restricting him to challenging it as applied to his conduct, because those who refrain from speech will never have a chance to make their claims in court." *Gaudreau*, 860 F.2d at 360.

14

arguments primarily rely on Section 5(1), which permits individuals to engage in certain activities

if the individual first obtains a license from the City. *See, e.g.*, docket no. 37 pp. 8, 13-14. Section

5(1) of the Clean Zone Ordinance states that an individual needs authorization if he or she "wishes

to sell or vend food, frozen food, flowers, souvenirs or other merchandise, erect temporary signage,

inflatables, banners [,] flags, pennants, wind or 'sandwich board' signs or project images, or

otherwise engage in temporary promotional or commercial activities of any kind" within the clean

zone. Docket no. 32-1 p. 3. Thus, the City argues that—by stating that a license was required for

"temporary promotional or commercial activities of any kind"—the Clean Zone Ordinance made

clear that it "prohibited *all* promotional activity . . . that wasn't docked to a permitted booth."

Docket no. 37 p. 8 (emphasis in original).

      Rather than demonstrating that Plaintiff had fair notice that his conduct was prohibited, the

City's argument instead demonstrates why the ordinance is unconstitutionally vague on its face.

Indeed, to the extent that the City contends that it is Section 5(1) that dictates the scope of the

prohibited activity, the ordinance—on its face—restricts all "temporary promotional or

commercial activities of any kind." Docket no. 32-1 p. 3. The scope of that restriction is not only

broad—which the City appears to admit—but also wholly undefined. For example, does a fan who

"promotes" his or her team by waving a pom-pom engage in a "promotional activity" such that he

or she would first need a license from the City? Or what about an attendee wearing team

memorabilia or leading others in the singing of a fight song? As demonstrated, once the City seeks

to utilize the ordinance to regulate "promotional activities" in the non-commercial context, it is

apparent that careful limitations are needed in order to clearly define the scope of the prohibited

activities. Notably, an individual sharing religious information vocally—without the distribution

of hard-copy materials—is almost certainly engaged in a "promotional" activity, and yet Officer

Castello and the City have both asserted that Plaintiff would have been free to do just that under the ordinance.[14] *See, e.g.*, docket no. 37 pp. 5, 8-9, 12 (asserting that "Plaintiff could have stood on a soapbox and preached to the crowd"). In sum, once the language in Section 5(1) becomes the guidepost as to the conduct that is regulated within the clean zone, the ordinance no longer provides clear guidance as to the scope of the activities restricted by the Clean Zone Ordinance, and instead, the apparent restriction on "temporary promotional activities" clearly threatens conduct that is protected by the constitutional right of free assembly and speech. For that reason, it appears any ordinance containing such a restriction—without clear limitations—must be voided as vague.

To be fair, neither the City nor Officer Castello appears to believe that the Clean Zone Ordinance *should* be enforced so broadly. Instead, the City's briefing asserts that the ordinance's reference to "promotional activities" is not overbroad or vague because the ordinance only restricted the distribution of promotional materials. *See, e.g.*, docket no. 50 p. 13. But *nothing* in Section 5(1) limits the supposedly prohibited "temporary promotional or commercial activities of any kind" to any "distribution," and notably, certain of the activities listed in Section 5(1), including "erect[ing] temporary signage," have nothing to do with distribution. Additionally, to the extent the City contends that Section 5(1)'s licensing requirement is necessarily restricted by the reference to "distribution" in Section 5, *see* docket no. 50 p. 13, the City's argument is belied by its own selective and arbitrary determination as to which portions of Section 5 limit Section 5(1). Notably, Section 5 specifically prohibits the distribution of "*services or goods*," however, the City declines to impose that specific content limitation on its interpretation of Section 5(1). *See*

---

[14] This example demonstrates how the Clean Zone Ordinance "authorize[d] [and/or] even encourage[d] arbitrary and discriminatory enforcement." *Morales*, 527 U.S. at 56. Thus, it is apparent that the language used in the Clean Zone Ordinance implicates both of the concerns articulated by the Supreme Court in *Morales*.

docket no. 32-1 p. 3; Section I.A, *supra* (noting that the City's briefing repeatedly replaces "goods" with "materials"). Moreover, the City's new limitation is hard to reconcile with its assertion that the Clean Zone Ordinance broadly "prohibited *all* promotional activity, including leafleting, that wasn't docked to a permitted booth." Docket no. 37 p. 8 (emphasis in original).[15] Thus, *even assuming* that one would clearly understand the language in Section 5 to potentially limit the ambiguous list of activities encompassed by Section 5(1)'s licensing requirement, the City's own inconsistencies demonstrate that the ordinance lacks clear guidance as to the extent to which Section 5 limits the scope of conduct governed by Section 5(1), *if at all*.

Although the City's briefing now seeks to impose limitations to the ordinance's plain language such that the ordinance is not vague, ambiguous, and overbroad on its face, the City may not rewrite the Clean Zone Ordinance during litigation. As drafted, the ordinance required a license for all "temporary promotional . . . activities of any kind," and as explained above, such language does not appear limited to activities involving "distribution" nor does it otherwise provide clear guidance as to the nature and types of activities restricted.[16] Instead, the language selected by the City arguably stifles activities protected by the constitutional right of free assembly and speech,

---

[15] The City asserts that this apparent restriction is "similar to the constitutionally permissible restriction" in *Heffron v. Int'l Soc. For Krishna Consciousness, Inc.*, 452 U.S. 640 (1981). *See* docket no. 37 p. 8. However, the restriction in *Heffron* did not restrict *all* promotional activity that was not affiliated with a permitted booth, and instead prohibited the sale or distribution of any merchandise including printed or written material except from a fixed location.

[16] To be clear, the Court recognizes that there are certain activities for which the Clean Zone Ordinance does provide notice of any prohibition. For example, a vendor selling merchandise, food, and/or flowers could not argue that the Clean Zone Ordinance, as written, does not clearly prohibit that conduct without a license. However, that fact does not preclude a finding that the ordinance is facially vague in cases *in which the ordinance restricts constitutionally protected conduct. See Vill. of Hoffman Estates*, 455 U.S. at 494 ("[A]ssuming the enactment implicates no constitutionally protected conduct, [the court] should uphold the [vagueness] challenge only if the enactment is impermissibly vague in all of its applications."). As described above, it is apparent that the broad language used in the Clean Zone Ordinance implicates constitutionally protected conduct.

and thus, the sweeping restriction makes the ordinance unconstitutionally vague on its face. Accordingly, the Court hereby finds that the Clean Zone Ordinance—or any ordinance with its *identical* language—is void as vague, and Plaintiff is entitled to summary judgment on his facial vagueness challenge. With respect to that theory of relief, Plaintiff's Motion will be granted and the City's Motion will be denied.

## II.    Plaintiff's Requested Relief from the City

As described above, the Court has found that the Clean Zone Ordinance was unconstitutional both on its face and as applied to Plaintiff's conduct on April 2, 2018. As a result, the Court finds that Plaintiff is entitled to declaratory relief consistent with these conclusions as well as nominal damages of $1.00. *See Lewis v. Woods*, 848 F.2d 649, 651 (5th Cir. 1988) ("As the Supreme Court and this circuit have emphasized, a party who proves a violation of his constitutional rights is entitled to nominal damages . . . ."). Additionally, the Court concludes that Plaintiff is entitled to recover his reasonable attorney's fees from the City pursuant to 42 U.S.C. § 1988, as no "special circumstances" exist in this case that might render the award of fees unjust. *Hensley v. Eckerhart,* 461 U.S. 424, 429 (1983) (holding that under § 1988, "a prevailing party should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."); *see also Cruz v. Hauck*, 762 F.2d 1230, 1233 (5th Cir. 1985) ("[T]he discretion afforded district courts to deny attorney's fees to prevailing plaintiffs under § 1988 is exceedingly narrow."); *Sanchez v. City of Austin*, 774 F.3d 873, 880-81 (5th Cir. 2014) (collecting cases demonstrating that fees must generally be awarded under § 1988).

Additionally, although Plaintiff now may arguably have notice of the City's intent with respect to the enforcement of the Clean Zone Ordinance (or identical ordinances), any other individual who attempts to distribute religious, non-commercial literature at future Final Four

events has been afforded no such fair warning. The same is true for any other individual wishing to engage in any apparently permissible "promotional activity," perhaps in the form of showing support for his or her favorite team. For that reason, the Court finds that it is appropriate to enjoin the City (and each of the City's agents, officials, or employees) from enforcing any *identical* restriction within a designated "clean zone" at subsequent sporting events.[17]

To be clear, in issuing its injunction, the Court fully recognizes that the Clean Zone Ordinance in question has already expired by its own terms. *See* docket no. 32-1 p. 1; *cf. JSLG, Inc. v. City of Waco*, 504 Fed. Appx. 312, 318 (5th Cir. 2012) (noting that as a general rule, a plaintiff who is not "subject to regulation under the challenged ordinance … no longer has a cognizable interest in declaring the ordinance facially unconstitutional"). However, with respect to the specific injunction the Court has determined to be appropriate, the Court concludes that Plaintiff has satisfied the showing that there is "a substantial risk" that he will again suffer the same injury absent the injunction such that Plaintiff is entitled to prospective relief. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5) (2013)). As an initial matter, the record indicates that—absent an injunction— the City is likely to use the same or similar language in any future clean zone ordinance. Importantly, although the City now asserts that Plaintiff has not demonstrated that the same or similar language has been used in prior ordinances, *see* docket no. 50 p. 15, the City's assertion ignores that the City admitted as much in its answer to Plaintiff's Complaint. *See* docket no. 8 ¶ 28 (admitting that the Clean Zone Ordinance "contain[ed] the same or similar language as 'Clean

---

[17] The City has admitted that the Clean Zone Ordinance in question used the same or similar language as that in prior clean zone ordinances. *See* docket no. 8 ¶ 28. The Court will not speculate to what extent the City must modify the Clean Zone Ordinance's existing language in order (i) to adequately limit the overly-broad and vague restriction on "promotional activities" and/or (ii) to provide fair notice that the ordinance restricts the distribution of non-commercial materials.

Zone' ordinances adopted by the city previously"); Fed. R. Civ. P. 56(c)(1)(A) (including "admissions" in list of examples of competent summary judgment evidence). The record also demonstrates that the City has agreed to again implement some version of a clean zone ordinance as part of its bid to host Final Four events in 2021 and 2025. *See* docket no. 34-1, Ex. K at 19:6-11, 20:4-8. Finally, the record further indicates that Plaintiff has attended past Final Four events to distribute literature, and Plaintiff has made plans to do so again for the 2021 and 2025 events in San Antonio. *See* docket no. 34-1, Ex. A at ¶ 17; docket no. 53-1, Ex. AA. Based on the above, the Court concludes that Plaintiff has satisfied the showing necessary to secure the narrow prospective relief that the Court finds to be appropriate in this case.

In sum, the Court concludes it is appropriate to award Plaintiff monetary relief, fees and expenses, declaratory relief, and injunctive relief, each of the forms of relief requested in Plaintiff's Complaint. Thus, to the extent Plaintiff requests such relief from the City, Plaintiff's Motion is granted, and the City's Motion is denied. Further, and in light of the above findings and the relief awarded, it is unnecessary for the Court to address the issue of whether the enforcement of the Clean Zone Ordinance *also* violated Plaintiff's First Amendment rights. *See, e.g., Ezell v. City of Chicago*, 651 F.3d 684, 711 (7th Cir. 2011) (concluding that plaintiffs were entitled to preliminary injunction based on a Second Amendment claim and declining to reach alternative First Amendment claim as "surplusage"). Indeed, based on Plaintiff's Fourteenth Amendment Due Process Clause claim, the Court has already determined that (i) the Clean Zone Ordinance was unconstitutional both on its face and as applied to Plaintiff's conduct on April 2, 2018, (ii) Plaintiff is entitled to declaratory relief as to those issues, (iii) Plaintiff is entitled to nominal damages, attorney's fees, and expenses and (iv) Plaintiff is entitled to an injunction preventing the City from enforcing the Clean Zone Ordinance (or another ordinance with *identical* language) to regulate

activities in future "clean zones." Thus, Plaintiff has for all practical purposes been afforded all

relief requested from the City, and Plaintiff's alternative theories of relief are "moot."[18]

Moreover, any additional relief from the City would be inappropriate *even assuming* the

Court concluded that the enforcement of the existing Clean Zone Ordinance also violated

Plaintiff's First Amendment rights. For example, Plaintiff's request that the Court enjoin "other

similar ordinances" would both (i) force the Court to speculate as to what language the City may

utilize in subsequent ordinances and (ii) force the City to guess as to what language is permissible

in subsequent ordinances. This is important because, although the Court has not thoroughly

---

[18] This is not to say that Plaintiff's First Amendment claim is "moot" in the technical sense. Indeed, "[a] case does not become moot for the purposes of Article III merely because a court finds that the plaintiff is entitled to relief under one of a number of alternative theories." *Saucedo v. Gardner*, 335 F. Supp. 3d 202, 222-23 (D.N.H. 2018); *see also Air Line Pilots Ass'n, Int'l v. UAL Corp.*, 897 F.2d 1394, 1397 (7th Cir. 1990) ("Whether a court gives one or ten grounds for its result is not a question to which Article III prescribes an answer."). But courts also use the term "moot" to "refer to an issue that need not be decided in light of the resolution in the same opinion of another issue." *UAL Corp.*, 897 F.2d at 1397. The decision to reach or avoid an unnecessary issue falls within the court's discretion, *see Novella v. Westchester Cty.*, 661 F.3d 128, 149 (2d Cir. 2011), and courts regularly decline to consider additional constitutional theories of relief when doing so is unnecessary to award the requested relief. *See, e.g., Ezell*, 651 F.3d at 711; *Henley v. Sunier*, 117CV02385JMSTAB, 2018 WL 6268297, at *9 (S.D. Ind. Nov. 30, 2018) ("Because the Court has granted Mr. Henley's Fourth Amendment claim relating to his arrest, it need not address his alternative First Amendment claim based on the same conduct."); *Weatherspoon v. Oldham*, 17-CV-2535-SHM-CGC, 2018 WL 1053548, at *8 (W.D. Tenn. Feb. 26, 2018) ("Having granted Weatherspoon relief on his Due Process claim, the Court need not address Weatherspoon's Equal Protection claim."); *Curry ex rel. Curry v. Sch. Dist. of the City of Saginaw*, 452 F. Supp. 2d 723, 741 (E.D. Mich. 2006) ("Given the finding that the plaintiffs' free speech rights under the First Amendment were violated, the Court need not address the Equal Protection claim."); *Speer v. Miller*, 864 F. Supp. 1294, 1302 (N.D. Ga. 1994) ("Because the Court has found that O.C.G.A. § 35-1-9 violates the First Amendment, Plaintiff is entitled to all of the injunctive relief which he seeks. Accordingly, the Court finds that it need not address Plaintiff's Equal Protection claim."). Courts that have declined to address additional constitutional claims do so both in furtherance of judicial economy and in order to avoid opining on otherwise avoidable, abstract constitutional propositions. *See, e.g., Saucedo*, 335 F. Supp. 3d at 222-23. In this case, and in light of those considerations, the Court concludes that it is neither necessary nor prudent to reach the merits of Plaintiff's First Amendment claim and/or certain arguments regarding Plaintiff's request for non-monetary relief from Castello. *See* Section III, *infra*.

analyzed the First Amendment issue in this case, the existing law—which is discussed more in Section III, *infra*—demonstrates that the City *might* be able to regulate the distribution of *all materials* within a "clean zone"—including non-commercial, religious materials—with a carefully drafted, narrowly-tailored, content-neutral ordinance. But the Court is not in a position to speculate as to what that ordinance or any other ordinance may look like, and the Fifth Circuit has cautioned courts to avoid entering forward-looking injunctive relief when there is uncertainty regarding the likelihood or nature of future harm. *See generally Stringer v. Whitley*, 942 F.3d 715, 723 (5th Cir. 2019). In this case, that uncertainty does not just result from the fact that the Court does not know the terms of any hypothetical future clean zone ordinance. Indeed, uncertainty also results from the ongoing global Covid-19 pandemic, which has affected most aspects of life, including sporting events and other large gatherings. Importantly, numerous sporting events have been cancelled and/or are being conducted without fans in attendance,[19] and there very well may be other regulations or ordinances (public health or otherwise) that may prohibit the congregation of individuals and/or the distribution of services, goods *or other materials* near any upcoming Final Four event in San Antonio.

In light of all of the above, the Court will not venture a guess as to what language might be included in future City ordinances, nor whether such language may properly serve to regulate the

---

[19] As examples, the 2020 NCAA Division I Women's Final Four and 2020 NCAA Division I Men's Final Four events were cancelled as a result of the ongoing Covid-19 pandemic. *See* http://www.ncaa.org/about/resources/media-center/news/ncaa-cancels-remaining-winter-and-spring-championships (last visited July 17th, 2020). Additionally, numerous sports leagues that have resumed play have done so without fans in attendance and/or have announced their intention to do so. *See, e.g.,* https://stats.nba.com/returntoplay2020/ (last visited July 17th, 2020) (stating that there will be no live audience for remaining 2019-2020 NBA "restart" games); https://www.pgatour.com/news/2020/04/16/pga-tour-schedule-adjustments-2019-2020-fedexcup-season-2020-2021-regular-season-coronavirus.html (last visited July 17th, 2020) (announcing certain PGA Tour events will be closed to the public).

distribution of religious, non-commercial materials. Accordingly, the Court will limit its injunction to the language the City used in the Clean Zone Ordinance, and the Court will decline to issue an injunction prohibiting the enforcement of, as of now, hypothetical ordinances of unknown content. However, in the event the City subsequently enacts a revised ordinance that Plaintiff contends violates his constitutional rights, the courthouse door will again be open to Plaintiff.

### III.    Plaintiff's Requested Relief from Castello

As set forth above, the Court has concluded that Plaintiff's constitutional rights were violated when Castello utilized the City's Clean Zone Ordinance to restrict Plaintiff's distribution of religious, non-commercial literature on the date in question. To the extent the Court has concluded that declaratory and injunctive relief are appropriate against the City, the appropriate relief selected by the Court already encompass Castello's (past and future) conduct.[20] With respect to the appropriate declaratory relief, it is unnecessary to make such relief Defendant-specific. And with respect to the Court's forward-looking injunctive relief, the Court's injunction will apply to the City and each of the City's agents, officials, or employees. Thus, Officer Castello (and all other SAPD officers) will be enjoined by this Court's ensuing order.[21] For that reason, Plaintiff's Motion

---

[20] Castello's Motion asserts that Plaintiff's "due process challenges do not pertain to Castello" because Castello did not "adopt" nor was he "otherwise responsible" for the passage of the ordinance. But Castello provides no explanation (or supporting precedent) as to why that *necessarily* shields Castello from a claim that Castello's conduct violated Plaintiff's due process rights. Courts *permit* plaintiffs to assert due process claims against officers who enforce statutes that are alleged to be unconstitutionally vague, irrespective of whether the officers actually adopted or passed the law themselves. *See, e.g., Newell v. Sauser*, 79 F.3d 115 (9th Cir. 1996).

[21] Castello's Motion notes that Castello is now on a different unit within the SAPD, and thus, Castello contends that there is no imminent threat that Castello again will enforce any related ordinance on Plaintiff in the future. *See* docket no. 32 p. 4 n.2; docket no. 32-3. The Court need not address Castello's argument. Indeed, Plaintiff has demonstrated that there is an imminent threat that *some* City officer will enforce an identical ordinance on Plaintiff in the future. *See* Section II. Of course, Plaintiff at this time does not know which SAPD officer (or unit) may enforce the ordinance in the future. For that reason, the Court's injunction will apply to the City and each of its agents, officials, or employees, including Officer Castello and any other officer in the SAPD.

and Castello's Motion will each be denied as moot to the extent Plaintiff separately requests declaratory or injunctive relief *specifically* as to Castello.[22]

However, Plaintiff also seeks recovery of monetary (nominal) damages from Officer Castello, individually, on the basis that Officer Castello violated Plaintiff's constitutional rights. *See* docket no. 1; docket no. 34 p. 19; docket no. 38 pp. 12-13. Plaintiff also appears to request attorney's fees from both Defendants. *See* docket no. 1. Officer Castello contends that Plaintiff's damages claims against Castello are barred by qualified immunity, even assuming—as the Court has now concluded—that the enforcement of the Clean Zone Ordinance as to Plaintiff was ultimately unconstitutional. *See* docket no. 32. This Court agrees with Officer Castello.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established . . . constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix*, 136 S. Ct. at 308 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). For that reason, the Supreme Court has repeatedly reiterated the principle that qualified immunity protects "'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2018) (quoting *Mullenix*, 136 S. Ct. at 308). If applicable, qualified immunity insulates an officer sued in his or her *individual* capacity both from personal liability for damages and personal liability for attorney's fees awarded under 42 U.S.C. § 1988.[23] *See Familias Unidas v. Briscoe*, 619 F.2d

---

[22] *See* note 18, *supra*.

[23] The Court notes that attorney's fees may not be barred by qualified immunity in cases in which the official is also sued in his or her *official* capacity. *See Jackson v. Galan,* 868 F.2d 165, 168 (5th Cir. 1989) (holding that attorney's fees may be awarded against a public official sued in official capacity even when the official is individually immune from money damages); *Johnson v.*

391, 406 (5th Cir. 1980) ("[T]he same qualified 'good faith' immunity that insulated [defendants] from personal liability for damages also forecloses their personal liability for plaintiffs' [§ 1988] attorney's fees.").

With respect to the enforcement of an existing law or ordinance, the Supreme Court has explained that police officers are "charged to enforce laws until and unless they are declared unconstitutional." *Michigan v. DeFellippo*, 443 U.S. 31, 38 (1979). Indeed, the "enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *Id.* In *DeFellippo*, the Supreme Court explained its determination in part by noting that "[s]ociety would be ill-served if its police officers took it upon themselves to determine which laws are and which are not constitutionally entitled to enforcement." *Id.*

In this case, the Clean Zone Ordinance in question had not been declared unconstitutional on the date of Officer Castello's enforcement, and thus, Plaintiff's claims do not fall under the "declared unconstitutional" prong under *DeFillippo*. Accordingly, Officer Castello is entitled to qualified immunity unless the ordinance was "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws." *DeFellippo*, 443 U.S. at 38.[24] In

---

*Mississippi*, 606 F.2d 635, 637 (5th Cir. 1979) (fact that officials merely performed their duty by enforcing statute did not make award under § 1988 unjust when officials were sued in their official capacities).

[24] The Court recognizes that the Supreme Court's *DeFillippo* opinion did not specifically address qualified immunity, and instead, it discussed an officer's enforcement of an unconstitutional ordinance in the context of the exclusionary rule. *See id.* at 38. However, the "any person of reasonable prudence" standard set forth in *DeFillippo* closely tracks the "every reasonable official" standard used to determine whether an officer is entitled to qualified immunity. *Mullenix*, 136 S. Ct. at 308. For that reason, it is unsurprising that courts regularly look to *DeFillippo* when deciding issues of qualified immunity. *See e.g., Rockwell v. City of Garland, Tex.*, No. 3:08-CV-251-M-

conducting its analysis as to that question, the Court is cognizant that officers are "generally entitled to rely on the presumption that all relevant legal and constitutional issues have been considered and that the statute is valid." *Connecticut ex rel. Blumenthal v. Crotty*, 346 F.3d 84, 105 (2d Cir. 2003); *see also Grossman v. City of Portland,* 33 F.3d 1200, 1210 (9th Cir. 1994) ("[A]n officer who reasonably relies on the legislature's determination that a statute is constitutional should be shielded from personal liability.").

The Court will first determine whether Castello is entitled to qualified immunity with respect to Plaintiff's First Amendment claim for damages. As an initial matter, the Court has already explained above why it need not specifically determine whether enforcement of the Clean Zone Ordinance violated Plaintiff's First Amendment rights in order to award Plaintiff monetary, declaratory, and injunctive relief from the City. The Court similarly concludes that it also need not engage in that *complete* analysis in order to determine that Officer Castello is entitled to qualified immunity on Plaintiff's claim for damages. In any event, however, the Court will briefly discuss the relevant analytical framework to demonstrate why Plaintiff's First Amendment claim for damages against Castello is barred.

If one read only Plaintiff's briefing in opposition to Castello's Motion, he or she might conclude that it is clear as day that the First Amendment would never permit a municipality to restrict an individual's distribution of non-commercial leaflets in any public area. *See* docket no. 38 p. 4 (asserting that "[c]lear and well-settled case law shows a permit requirement on individual or small group noncommercial speech on public sidewalks is an unconstitutional restriction"). But that is not the black letter law, and *certain* portions of Plaintiff's briefing ignore the nuanced nature

---

(BF), 2010 WL 3384833 (N.D. Tex. June 10, 2010), *aff'd Rockwell v. Brown*, 664 F.3d 985 (5th Cir. 2011).

of the required analysis.[25] Instead, because the Clean Zone Ordinance is a content-neutral restriction on speech on public streets,[26] it can withstand a First Amendment challenge if (i) it is narrowly tailored to serve a significant government interest, and (ii) it leaves open ample alternative channels of communication. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). Because courts have held that aesthetic concerns may constitute a significant government interest,[27] the determination of whether enforcement of the Clean Zone Ordinance complies with the First Amendment requires a fact-specific evaluation as to (i) whether it was "narrowly tailored" to serve that purpose and (ii) whether it left open ample alternative channels of communication.

Notwithstanding the multi-step evaluation required, Plaintiff contends that not only *should* Castello have conducted those evaluations to determine whether the Clean Zone Ordinance passed constitutional muster, *see* docket no. 38 p. 4, but also that *any* officer who conducted such an evaluation would necessarily have determined that the Clean Zone Ordinance was unconstitutional. *See id.* at p. 12 (contending that "no reasonable police officer could conclude that enforcing a prohibition on noncommercial literature distribution on public sidewalks without

---

[25] Admittedly, *other* portions of Plaintiff's response acknowledge that many factors must be considered when determining whether enforcement of the Clean Zone Ordinance violated Plaintiff's First Amendment rights. *See* docket no. 38 p. 5 (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) and noting that the applicable analysis considers whether the restriction is content-neutral, whether it is narrowly tailored to serve a significant government interest, and whether it leaves ample alternative channels of communication).

[26] Plaintiff does not appear to contest that the Clean Zone Ordinance is content neutral.

[27] *See, e.g.*, *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-08 (1981) ("Nor can there be substantial doubt that the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are substantial governmental goals."); *Lindsay v. City of San Antonio*, 821 F.2d 1103, 1108–09 (5th Cir. 1987) ("It is well-established that, as the district court found, the state may legitimately exercise its police powers to advance the substantial governmental goals of aesthetics and traffic safety.").

seeking and obtaining a permit in advance is constitutional"). Plaintiff's assertion is unpersuasive, at best. Importantly, the ordinance contained geographic, temporal, and substantive limitations, and Castello was not under an affirmative obligation to determine himself whether those limitations were "narrowly tailored" enough under existing First Amendment jurisprudence. Similarly, the ordinance—at least as it was enforced by Castello—also left open alternative channels for communication (*e.g.*, a licensing process for certain activities, oral communication rather than physical distribution, etc.), and Castello was in no position to evaluate, as a legal matter, whether those alternatives were constitutionally "ample." Notably, the Court—unlike Castello on the date in question—is presently well versed on the relevant ordinance, the applicable precedent, and the extensive record, and *even now* it is not clear the Court could reach a conclusion on each evaluation at this stage if such an evaluation were required.[28] There is simply no credible basis for Plaintiff to assert either that Castello knew he was violating Plaintiff's First Amendment rights through the enforcement of the Clean Zone Ordinance or that "every reasonable officer" would have known that he or she was doing so. *See Cantrell v. Rumman*, No. 04 C 3041, 2005 WL 1126551 (N.D. Ill. Feb. 9, 2005) (finding regulation violated plaintiff's First Amendment rights, but holding that the enforcing officers were entitled to qualified immunity because the First Amendment analysis was a "difficult" one that required the balancing of "competing and compelling interests"). Thus, irrespective of whether the Clean Zone Ordinance might ultimately fail following a complete analysis under the applicable multi-pronged standard, it is apparent that

---

[28] For example, with respect to the issue of whether the Clean Zone Ordinance was "narrowly tailored," the Court does not have information regarding how the City determined the ordinance's geographic or temporal limits and/or information demonstrating the extent to which the City considered other potential means of protecting its aesthetic interests. *See, e.g.*, docket no. 34-1, Ex. K at 22:6-23:1 (testimony of City employee stating that she did not know how the geographic boundaries were determined).

there is no material issue of fact as to whether Defendant Castello is entitled to qualified immunity as to Plaintiff's First Amendment claim for damages.

With respect to the violation of Plaintiff's due process rights under the Fourteenth Amendment, the Court also concludes that Castello is entitled to qualified immunity.[29] As noted in Section I of this Order, the language used in Section 5, Section 5(1), and Section 9 of the Clean Zone Ordinance is hardly the beacon of clarity. Rather than providing clear guidelines as to the nature of the activities that were supposedly prohibited by the Clean Zone Ordinance, the drafters of the ordinance put Officer Castello in the unenviable position of having to determine the exact scope of the prohibited conduct himself. Indeed, Castello's deposition testimony indicated that the City made no effort to provide detailed guidance regarding the permissible applications of the ordinance, and instead, Castello was forced to determine its scope just by reading the ordinance as a layman. *See* docket no. 34-1, Ex. L at 8:24-11:11, 18:21-19:2.

Although the Court has ultimately concluded that the ordinance is unconstitutionally vague, that does not mean that Officer Castello did not have a plausible basis for concluding Plaintiff's conduct was covered by the ordinance. Indeed, the plain terms of *one section* of the Clean Zone Ordinance do state that a license is required for "any person who wishes to . . . engage in temporary promotional . . . activities of any kind," and Plaintiff was arguably engaged in a promotional activity without a license. Docket no. 32-1 p. 2; *see also* Section I.B, *supra*. In that way, one section of the Clean Zone Ordinance would suggest to Officer Castello that Plaintiff's

---

[29] Plaintiff's response to Castello's Motion indicates that Plaintiff may only be seeking monetary damages from Castello on the basis of Castello's alleged violations of Plaintiff's First Amendment rights. *See* docket no. 38 pp. 12-13. However, because Plaintiff's due process claim and other portions of Plaintiff's Complaint refer to "Defendants" collectively, *see* docket no. 1, the Court will—out of an abundance of caution—explain why qualified immunity also bars Castello's personal liability for damages with respect to the violation of Plaintiff's Fourteenth Amendment rights.

conduct was prohibited, *even as other sections* would plainly indicate to Plaintiff that the Clean

Zone Ordinance was not intended to cover his distribution of religious, non-commercial literature.

Further, with respect to his enforcement of the ordinance as to Plaintiff, Officer Castello appeared

to use his best judgment to limit the scope of the ordinance to Plaintiff's "distribution" of items (a

limitation that is not explicitly contained in Section 5(1)'s general license requirement for

"promotional . . . activities of any kind"), and Castello repeatedly told Plaintiff that he was

welcome to share his views with passers-by without distributing his cards. In that way, the record

demonstrates that Officer Castello tried to make meaningful efforts to protect Plaintiff's

constitutional rights in ways not explicitly required by the ordinance, and Officer Castello's only

apparent mistake was his determination that the word "goods" in Section 5 included Plaintiff's

non-commercial literature. *See* docket no. 32-2 (Castello explaining to Plaintiff that "goods"

means "anything"). Such a mistake was not a "knowing" violation of Plaintiff's rights, as Castello

repeatedly explained to Plaintiff his (plausible, but mistaken) basis for his interpretation. *See*

docket no. 32-2. Further, given that the record demonstrates that Castello's interpretation of the

Clean Zone Ordinance mirrors that of the City, *see, e.g.*, docket no. 37, it hardly would have been

clear to "every reasonable official" in Castello's position that such an interpretation clearly

violated Plaintiff's constitutional rights.[30]

---

[30] In many ways, the Court finds that the present case parallels the analysis conducted by the court in *Cantrell v. Rumman*, No. 04 C 3041, 2005 WL 1126551 (N.D. Ill. Feb. 9, 2005). In *Cantrell*, the district court held that certain portions of an Illinois regulation requiring individuals to obtain a permit before leafletting in an area in downtown Chicago were unconstitutional. *See id*. However, the *Cantrell* court held that the officers who enforced the regulation as to Plaintiff were entitled to qualified immunity. *See id*. at *15. In doing so, the court cited *DeFillippo*, 443 U.S. at 38, and the court specifically rejected plaintiff's argument that it should have been "sufficiently clear to [the officers] that barring one man from handing out leaflets and talking with people in the [public plaza] violated his rights." *See Cantrell*, 2005 WL 1126551 at *15 (quotations omitted). Indeed, although the *Cantrell* court ultimately determined that the challenged regulation did violate the plaintiff's First Amendment rights, the court specifically noted that the determination was a "difficult" one "given the competing and compelling interests" that must be considered. *Id*. The

In sum, Plaintiff's constitutional injury was not the result of rogue enforcement by Castello, and given the vagueness of the ordinance and the complexity of the applicable constitutional frameworks, the Court finds that a reasonably prudent official in Castello's position would not have understood his or her actions to unquestionably violate Plaintiff's clearly established rights. *See Mullenix*, 136 S. Ct. at 308. Indeed, in this case, the record makes clear that Officer Castello neither acted in a plainly incompetent manner nor did he knowingly violate the law. *White*, 137 S. Ct. at 551. Instead, Officer Castello merely enforced the Clean Zone Ordinance in the broad manner apparently *intended by the City*, and Castello—a police officer, not a constitutional scholar—was not on notice that such an application was clearly unconstitutional.

Accordingly, although the Court has *now* determined that the ordinance was unconstitutionally vague, *see* Section I, *supra*, Plaintiff is misguided to the extent he seeks recovery of monetary damages or attorney's fees from Officer Castello. *See Familias Unidas*, 619 F.2d at 406. The Court concludes that there is no genuine issue of material fact with respect to whether Plaintiff's damages claims and fee request against Castello are barred by the doctrine of qualified immunity. On that basis, Defendant Castello's Motion will be granted and Plaintiff's Motion will be denied with respect to Plaintiff's request for monetary damages, attorney's fees, and expenses from Castello.

---

Court believes that this case closely parallels that analysis. Specifically, it was only after this Court conducted a detailed and complex analysis that it became apparent that the City's enforcement of the Clean Zone Ordinance was unconstitutional. *See* Section I, *supra*. But Officer Castello was not required to conduct that analysis on the date question, and—although Plaintiff offers several conclusory assertions regarding what Plaintiff believes Officer Castello should have known regarding complex constitutional doctrines—Plaintiff provides no persuasive basis as to why every officer in Castello's position would have reasonably known that Plaintiff's constitutional rights were being violated through the enforcement of the City's Clean Zone Ordinance.

## CONCLUSION AND ORDER

For the reasons set forth above: Plaintiff Jose Muniz's Motion for Summary Judgment (docket no. 34) is **GRANTED IN PART, DENIED IN PART** and **DENIED AS MOOT IN PART**; Defendant Angel Castello's Motion for Summary Judgment (docket no. 32) is **GRANTED IN PART** and **DENIED AS MOOT IN PART**; and Defendant City of San Antonio's Motion for Summary Judgment (docket no. 37) is **DENIED IN PART** and **DENIED AS MOOT IN PART**. Specifically:

- With respect to Plaintiff's Fourteenth Amendment theories of relief, Plaintiff's Motion is granted and the City's Motion is denied;[31]

- With respect to Plaintiff's First Amendment theories of relief, Plaintiff's Motion, the City's Motion, and Castello's Motion are each denied as moot;[32]

- With respect to Plaintiff's requests for injunctive relief, declaratory relief, monetary damages, attorney's fees, and expenses from the City of San Antonio, Plaintiff's Motion is granted and the City's Motion is denied;

- With respect to Plaintiff's requests for monetary damages, attorney's fees and expenses from Castello, Plaintiff's Motion is denied and Castello's Motion is granted;

- With respect to Plaintiff's request for separate declaratory and injunctive relief against Castello, Plaintiff's Motion and Castello's Motion are each denied as moot.

---

[31] As noted in the background section of this Order, Castello's Motion does not specifically seek summary judgment as to the merits of Plaintiff's Fourteenth Amendment theory of relief. *See* docket no. 32 p. 2; note 2, *supra*.

[32] *See* note 18, *supra*.

**IT IS THEREFORE ORDERED, ADJUDGED** and **DECREED** that:

- City of San Antonio Ordinance 2017-03-30-0186 is unconstitutionally vague both on its face and as applied to restrict Plaintiff or others from distributing religious, non-commercial literature within the designated clean zone;

- Plaintiff's constitutional rights were violated on April 2, 2018 when Plaintiff was restricted from distributing religious, non-commercial literature within the designated clean zone on the basis that he was violating City of San Antonio Ordinance 2017-03-30-0186;

- As a result of the deprivation of Plaintiff's constitutional rights, Plaintiff is entitled to nominal damages in the amount of $1.00 from the City of San Antonio;

- As the prevailing party, Plaintiff is entitled to recover his reasonable attorney's fees and expenses from the City of San Antonio pursuant to 42 U.S.C. § 1988; and

- Defendant Angel Castello is entitled to qualified immunity, and Plaintiff shall take nothing as to his claims for monetary damages, attorney's fees or expenses against Angel Castello.

**IT IS FURTHER ORDERED, ADJUDGED** and **DECREED** that the City of San Antonio, its agents, officials, and employees are hereby **ENJOINED** from applying or enforcing any ordinance with *identical* language as that found in Sections 5, 5(1) and 9 of City of San Antonio Ordinance 2017-03-30-0186 to restrict activities and/or to require a license for certain activities within any "clean zone" designated for any upcoming sporting event.

**IT IS FURTHER ORDERED** that Defendant Castello's objections to Plaintiff's summary judgment evidence (docket no. 41) are **OVERRULED AS MOOT** for the reasons set forth in note 4, *supra*.

33

Finally, **IT IS ORDERED** that, to the extent Plaintiff seeks to recover attorney's fees from the City pursuant to 42 U.S.C. § 1988, Plaintiff shall—within <u>fourteen (14) days</u> of the date of this Order—file an application for fees (and all supporting materials), as specifically set forth in Local Rule CV-7(j)(1).[33] Pursuant to Local Rule CV-7(j)(2), the City may file any objections to Plaintiff's application within <u>fourteen (14) days</u> of the date on which Plaintiff's application is filed. Following the Court's determination as to the appropriate sum of attorney's fees to be awarded, final judgment will be entered consistent with the above Order.

It is so **ORDERED**.

**SIGNED** this ___5___ day of ___August___, 2020.

_____
ORLANDO L. GARCIA
Chief United States District Judge

---

[33] Any application must also contain the certificate of conference (and the specific information it must include) as described in Local Rule CV-7(j)(1).